IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CORIDON W.,[1]

                Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 2:24-cv-00999-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

       Coridon W. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

///

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party.

For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is so because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded*

*on other grounds by regulation as recognized in Farlow v. Kijakazi, 53 F.4th 485, 487 (9th Cir. 2022)*))).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in April 1982, making him thirty-six years old on March 25, 2019, his alleged disability onset date.[2] (Tr. 35.) Plaintiff has at least a high school education and past work experience as a mobile butcher/meat dresser and housekeeper/cleaner. (*Id.*) In his applications, Plaintiff alleged disability due to degenerative disc disease, cervical neck fusion, anxiety, carpal tunnel syndrome, and arthritis. (*Id.* at 248.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on April 4, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 72-73, 94, 105, 151.) On April 6, 2023, Plaintiff, along with his attorney and an impartial vocational expert ("VE"), appeared and testified at an administrative hearing before an ALJ. (*Id.* at 44.)

On August 17, 2023, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 36.) On August 29, 2023, Plaintiff's counsel requested that the Appeals Council review

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of September 30, 2024 (Tr. 17, 19) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before September 30, 2024, he is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-cv-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

the ALJ's decision. (*Id.* at 201-03.) On April 19, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

///

III.    **THE ADMINISTRATIVE LAW JUDGE'S DECISION**

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 19-36.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 25, 2019. (*Id.* at 19.) At step two, the ALJ found that Plaintiff suffers from the following severe impairments: (1) degenerative disc disease with stenosis, (2) osteoarthritis and allied disorders, and (3) obesity. (*Id.* at 20.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 23.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform medium work,[3] subject to these limitations: (1) Plaintiff can "lift/carry [twenty] pounds occasionally and [ten] pounds frequently," (2) Plaintiff can "push/pull as much as [he] can lift/carry," (3) Plaintiff can sit/stand "[six] hours in an [eight]-hour workday" and "sit/stand as necessary at the workstation throughout the day," (4) Plaintiff "could be off task while at the workstation up to [ten percent]" and "might be absent [one] day per month," (5) Plaintiff can "occasionally reach overhead with bilateral upper extremities," (6) Plaintiff can "occasionally climb [] ladders but no ropes and scaffolds," and (7) Plaintiff can "frequently stoop" and "occasionally kneel, crouch and crawl." (*Id.* at 24.)

At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a mobile butcher/meat dresser or housekeeper/cleaner. (*Id.* at 35.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the

---

[3] The regulations define "medium work" as lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds; standing or walking for a total of approximately six hours in an eight-hour workday; frequent bending and stooping; and use of hands and arms to grasp, hold, and turn objects. *See* 20 C.F.R. § 404.1567(c); *see also* SSR 83-10, 1983 WL 31251, at *6 (same).

national economy that Plaintiff could perform, including work as a sales attendant in a self-service store, cashier II, or storage facility rental clerk. (*Id.* at 36.)

## DISCUSSION

Plaintiff argues in this appeal that the ALJ failed to identify specific, clear, and convincing reasons supported by substantial evidence in the record to discount Plaintiff's symptom testimony, and failed properly to evaluate the medical opinion of Matthew Lilley, M.D. ("Dr. Lilley"). (Pl.'s Opening Br. ("Pl.'s Br.") at 2-20, ECF No. 11.) For the reasons discussed below, the Court finds that the ALJ's decision is free of legal error and supported by substantial evidence.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

Plaintiff argues that the ALJ erred by failing to identify specific, clear, and convincing reasons supported by substantial evidence in the record to discount Plaintiff's subjective symptom testimony. (Pl.'s Br. at 2-17.)

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

B.    **Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 32.) As such, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

1.    **Effective Treatment**

The Court finds that substantial evidence supports the ALJ's discounting of Plaintiff's testimony on the ground that Plaintiff's symptoms improved with effective treatment.

It is well settled that an ALJ may discount a claimant's testimony based on evidence that his symptoms improved with treatment or were well controlled with medication. For example, in *Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's symptom testimony, and in doing so, noted that the ALJ appropriately found that the claimant's testimony was inconsistent with "record evidence that her kidney disease had improved, record evidence that her hypertension was under control, and record evidence that her depression [was] well controlled (when on medication regularly)." *Id.* (simplified).

Similarly, in *Fletcher-Silvas v. Saul*, 791 F. App'x 647, 649 (9th Cir. 2019), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's testimony regarding her limitations. *Id.* The Ninth Circuit noted that the ALJ appropriately found that the claimant's testimony that "her left leg improved only slightly and her right leg did not really improve following her knee replacement surgeries . . . conflicted with [her] self-reports to treatment providers and with the objective indicia of improvement in her medical record." *Id.*; *see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023)

PAGE 7 – OPINION AND ORDER

(holding that the ALJ provided clear and convincing reasons to discount the claimant's symptom

testimony, including "treatment efficacy[] and longitudinal improvement"); *Walker v. Kijakazi*,

No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (holding that substantial

evidence supported that the claimant's "pain improved after treatment and medication"); *Torres*

*v. Saul*, 798 F. App'x 979, 981 (9th Cir. 2019) ("The [ALJ] proffered specific, clear, and

convincing reasons for discounting [the claimant's] pain and limitations testimony because the

record showed that [her] conditions improved with treatment and were less severe than

alleged."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

(explaining that "[i]mpairments that can be controlled effectively with medication are not

disabling for the purpose of determining eligibility for [disability] benefits").

Consistent with these authorities, the ALJ appropriately discounted Plaintiff's symptom

testimony on the ground that his symptoms improved with treatment. The ALJ noted that

following Plaintiff's initial right knee injury, he received surgery in January 2020 after which his

symptoms and functionality improved. (Tr. 32.) With respect to Plaintiff's other symptoms,

including face, neck, and back pain, the ALJ noted that when compliant with medication and

physical therapy, Plaintiff reported experiencing significant relief. (*Id*. at 32-33.)

Substantial evidence supports the ALJ's evaluation of Plaintiff's symptom testimony.

Specifically, the record reflects that Plaintiff received effective treatment and his symptoms

improved when he was compliant with treatment protocols. For example, although Plaintiff was

temporarily restricted from performing work activity following his January 2020 knee surgery,

subsequent records reflect he recovered steadily from surgery and his symptoms improved. In

April 2020, Plaintiff was described as "doing well," and he told his provider that although his

knee still felt weak, the pain was much better, and he was able to "walk out of his house and get

up and down stairs." (*Id*. at 493.) Plaintiff was not released to work at that time, but was told

PAGE 8 – OPINION AND ORDER

"[h]e can be full weight bearing as tolerated." (*Id*. at 492.) The following month, Plaintiff reported that his knee pain was much better, and he told providers he could "go up and down hills and hike." (*Id*. at 498.) In June 2020, Plaintiff was told he could return to work with restrictions, including "no running, jumping or twisting, and no standing or walking for longer than [thirty] minutes at a time." (*Id*. at 517.) Plaintiff continued to attend physical therapy and reported increased functionality and strength. (*See, e.g.*, *id*. at 523, 525, 527, 529, 531.) In August 2020, Plaintiff was released to work with no restrictions. (*Id*. at 542.) In November 2020, Plaintiff's worker's compensation account was closed, and the settlement finalized on December 7, 2020. (*Id*. at 547, 561.)

Plaintiff acknowledges that his knee improved with treatment, but argues that the record demonstrates he remained disabled despite his improved knee functioning. (Pl.'s Br. at 8-9.) Plaintiff asserts that even if his knee symptoms improved to the point he could return to work without restriction in August 2020, he continued to experience "significant back pain with physical activity" after his knee pain resolved. (*Id*. at 9.) However, Plaintiff's argument is not supported by the record.

The ALJ's decision reflects that he evaluated the entire record and provided a thorough discussion of Plaintiff's longitudinal medical history. (Tr. 25-34.) The ALJ identified several specific examples where Plaintiff's symptom allegations were inconsistent with his successful record of treatment. For example, in February 2021, Plaintiff began to complain of neck pain, facial pain, headaches, and numbness. (*Id*. at 32, 651.) Plaintiff then underwent surgery for a cervical discectomy on May 6, 2021, and was discharged on May 8, 2021. (*Id*. at 619.) At a follow-up appointment on May 10, 2021, Plaintiff reported he did not require any narcotic painkillers and that his overall pain had improved. (*Id*.) By May 17, 2021, Plaintiff had regained full range of motion in his cervical spine with minimal pain. (*Id*. at 595.) In addition, the

medication that his provider prescribed to help with facial pain and swelling was effective, when Plaintiff was compliant. (*Id*. at 1084, 1207.)

Plaintiff also claims that his back pain was chronic and debilitating and that physical therapy was ineffective. (*Id*. at 54.) However, as the ALJ pointed out, the record reflects only two physical therapy visits for Plaintiff's lower back in March 2022. (*Id*. at 33, 1442-46.) Plaintiff reported his back was feeling better at the second visit on March 29, 2022, and he did not continue with physical therapy after that date. (*Id*. at 1445.) Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's pain improved with treatment.

For these reasons, the Court finds that the ALJ appropriately discounted Plaintiff's symptom testimony on the ground that his symptoms improved with effective treatment.

### 2.    Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, *261 F.3d 853, 857 (9th Cir. 2001)*. The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, *622 F.3d 1228, 1234 (9th Cir. 2010)* (quoting *Lester v. Chater*, *81 F.3d 821, 834 (9th Cir. 1995)*); *see also* *20 C.F.R. § 404.1529(c)(2)* (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Nevertheless, an ALJ may discount a claimant's testimony where it is inconsistent with the objective medical evidence. *See* *Bray v. Comm'r of Soc. Sec. Admin.*, *554 F.3d 1219, 1227 (9th Cir. 2009)* (affirming the ALJ's discounting of the claimant's testimony, in part, because it conflicted with the objective evidence); *20 C.F.R. § 404.1529(c)(4)* (explaining that ALJs "consider whether

there are any inconsistencies in the evidence and the extent to which there are conflicts between [a claimant's] statements and the rest of the evidence, including you history, the [medical] signs and laboratory findings, and statements by [] medical sources"); *id.* § 416.929(c)(4) (same).

The ALJ properly relied on objective medical evidence to discount Plaintiff's symptom testimony. Despite allegations of continued disabling pain, medical evaluations consistently described Plaintiff as alert, oriented, and in no acute distress. (*See, e.g.*, Tr. 543, 676-77, 687-88, 698-701, 1025, 1037, 1063); *see also Molina*, 674 F.3d at 1113 (holding that the ALJ did not err by discounting the claimant's testimony on the ground that her "allegations were undermined by her demeanor and presentation as described by [her psychiatrist]"). Plaintiff testified he had facial pain that had changed his life, resulting in being completely bedridden "at least three or four times a month." (Tr. 56.) However, the record reflects that once Plaintiff became compliant with his medications, he reported he no pain and acknowledged he was "actually making myself sick" by not taking his medications as prescribed. (*Id.* at 1084.)

Further, Plaintiff reported he dropped things frequently, was unable to lift more than a gallon of milk, and could not stand for more than twenty minutes at a time, but medical records reflect that Plaintiff had normal strength and reflexes upon exam. (*Id.* at 581, 983-84.) Although he testified he had decreased strength and coordination, he reported to providers that he had gone shooting with his father and noted that the bigger guns caused shoulder discomfort. (*Id.* at 59, 585.) Plaintiff also testified that his medications frequently made him nauseous, causing him to vomit in the morning (*id.* at 62), but the only record reflecting that Plaintiff complained of medication-related nausea was an appointment in February 2023, eighteen months after the medication was first prescribed. (Tr. 1024, 1677.) In light of these several specific examples, the Court finds that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's

testimony was contradicted by the medical record.[4] *See Carmickle*, 533 F.3d at 1161 (noting that contradiction with the medical record is a valid reason to discount a claimant's testimony). For these reasons, the Court finds that the ALJ did not err in evaluating Plaintiff's symptom testimony.[5]

## II.    MEDICAL OPINION EVIDENCE

Plaintiff argues that the ALJ erred in evaluating Dr. Lilley's medical opinions. (Pl.'s Br. at 17-19.)

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017."[6] *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion."[7] *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the

---

[4] The Court further notes that the ALJ's conclusion that Plaintiff's symptom testimony was inconsistent with the medical evidence was a reasonable interpretation of the record. Although Plaintiff offers an alternative interpretation, it is the ALJ's responsibility to resolve any ambiguities in the medical evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995))).

[5] The Court does not address Plaintiff's argument that the ALJ erred by discounting his testimony as inconsistent with his activities of daily living because the ALJ provided at least one clear and convincing reason, supported by substantial evidence, to discount his symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [it] as not credible").

[6] The parties agree that the revised regulations apply here because Plaintiff filed his application after March 27, 2017. (*See* Pl.'s Br. at 17-18; Def.'s Br. at 7, ECF No. 15.)

[7] In *Cross*, the Ninth Circuit held that the revised regulations are valid under both the Social Security Act and Administrative Procedures Act. 89 F.4th at 1216-17. Recently, "[t]he Supreme Court . . . overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,

persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

///

_____

467 U.S. 837 (1984), which 'required courts to defer to permissible agency interpretations of the statutes those agencies administer—even when a reviewing court reads the statute differently.'" *Williams v. O'Malley*, No. 23-35358, 2024 WL 3519774, at *1 n.1 (9th Cir. July 24, 2024) (quoting *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2254 (2024)). In *Cross*, the Ninth Circuit "held that the [Social Security] Act 'plainly encompasse[d] the Commissioner's authority to adopt regulations to govern the weighing of medical evidence,' without deferring to the agency's interpretation of the statute." *Id.* (quoting *Cross*, 89 F.4th at 1215). Consequently, the Ninth Circuit has found that the Supreme Court's decision in "*Loper* does not undercut *Cross*." *Id.*

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.      Analysis

The Court concludes that the ALJ did not commit harmful error in evaluating Dr. Lilley's medical opinions.

### 1.      Dr. Lilley's Opinions

In January 2020, Dr. Lilley performed arthroscopic surgery on Plaintiff's right knee. (Tr. 469.) Dr. Lilley then provided a series of post-surgery examinations, including statements on Plaintiff's medical fitness to return to work in connection with Plaintiff's worker's compensation claim. (*Id.* at 484, 490-91, 495, 498, 515, 539, 542.)

On May 14, 2020, Dr. Lilley provided a worker's compensation note releasing Plaintiff to limited activity, but not yet releasing Plaintiff to work in light of the heavy physical demands of his job processing large animals. (*Id.* at 995-96.) At a follow-up appointment on June 9, 2020, Dr. Lilley provided a return-to-work authorization with functional limitations, including no running, jumping, or twisting, and no standing or walking longer than thirty minutes at a time. (*Id.* at 518.) On August 13, 2020, Dr. Lilley released Plaintiff to "regular work without restriction." (*Id.* at 987.)

### 2.    The Administrative Law Judge's Decision

The ALJ found Dr. Lilley's opinion persuasive, noting that Dr. Lilley performed right-knee surgery on Plaintiff as part of his worker's compensation rehabilitation program. (*Id.* at 34.) With respect to supportability, the ALJ noted Dr. Lilley performed both the surgery and all follow-up examinations and his treatment notes supported his conclusions. (*Id.*) Additionally, the ALJ noted that Dr. Lilley's opinion was consistent with Plaintiff's "good response to surgery and physical therapy and normal examination on August 13, 2020." (*Id.*)

### 3.    Disposition

Plaintiff does not directly challenge the ALJ's evaluation of the supportability and consistency of Dr. Lilley's opinion, but argues that the ALJ improperly focused only on Dr. Lilley's August 2020 opinion to "evaluate [Plaintiff's] functional capacity throughout the full adjudicatory period." (Pl.'s Br. at 19.) The Court disagrees.

As an initial matter, the ALJ did not err by addressing Dr. Lilley's opinions in a single analysis, as Plaintiff suggests. The relevant regulations instruct that ALJs are not required separately to articulate how they considered multiple opinions from the same medical source. *See* 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."); §

416.920c(b)(1) (same). Thus, when a medical source provides multiple medical opinions, as here, as here, the ALJ will "articulate how [he] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." 20 C.F.R. § 404.1520c(b)(1); *see also id.* § 416.920c(b)(1) (same).

Plaintiff asserts that "even as of June 2020, Dr. Lilley's opinion exceeds the RFC," as Plaintiff was limited to standing and walking only thirty minutes at a time. (Pl.'s Br. at 19.) However, the ALJ was not required to include restrictions in the RFC that were not supported by the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting that an ALJ's RFC determination need only include those limitations found credible and supported by substantial evidence). Dr. Lilley's standing and walking limitation was included in a post-surgery return to work authorization that specifically instructed Plaintiff to return to the clinic for further follow-up in four weeks. (Tr. 515.) Dr. Lilley's prior and subsequent treatment notes contained no such restriction. (*Id*. at 987, 995-96.) Thus, the record reflects that Dr. Lilley's post-surgical limitations were only temporary, and the ALJ was not required to include temporary restrictions in Plaintiff's RFC. *See Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that temporary limitations assigned by a treating physician did not reflect the "claimant's long-term functioning"); *Crane v. Barnhart*, 224 F. App'x 574, 576-77 (9th Cir. 2007) (affirming the ALJ's rejection of more severe limitations because those limitations were "only temporary").

In any event, the RFC was not inconsistent with the temporary post-surgical limitations reflected in Dr. Lilley's May and June 2020 opinions, which included (i) no jumping, twisting, or contact sports, which are not work activities; (ii) no work with large animals, which the RFC addressed by restricting him from returning to his work as a butcher/meat dresser; and (iii)

PAGE 16 – OPINION AND ORDER

standing or walking only thirty minutes at a time, which the RFC addressed by allowing Plaintiff to alternate between sitting and standing as necessary.[8] (Tr. 24.)

Plaintiff also argues that Dr. Lilley's conclusion that Plaintiff could return to work without restriction in August 2020 is not supported by the record, given "subsequent records documenting severe worsening of [his] cervical spine impairment requiring surgical intervention, facial pain and swelling, and lumbar and spine impairments confirmed by MRI." (Pl.'s Br. at 19.) However, Plaintiff's complaints about subsequent impairments did not begin until February 3, 2021, nearly six months after Dr. Lilley released Plaintiff to return to work without restriction. (Tr. 542, 651.) Thus, the record does not support Plaintiff's argument that he was under a continuous disability for twelve months or more during the relevant period, as required by the regulations. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a). Further, as discussed above, the ALJ appropriately discounted Plaintiff's testimony regarding the severity of these impairments.

For these reasons, the Court finds that the ALJ did not commit harmful error in evaluating Dr. Lilley's medical opinions.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 28th day of August, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[8] The climbing restriction was only in place from May until June 2020. (Tr. 993, 995-96.) In any event, the RFC limited Plaintiff to occasionally climbing ladders and never climbing ropes or scaffolds. (Tr. 24.)